IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02333-CMA-KLM

ROBERT L.  RYBERG, on behalf of decedent and as personal representative of the
estate of Kevin C. Ryberg

        Plaintiff,

v.

THE CITY AND COUNTY OF DENVER,
THE DENVER POLICE DEPARTMENT,
DENVER POLICE DEPARTMENT OFFICER TIMOTHY LUKE,
DENVER POLICE DEPARTMENT OFFICER RANDALL KROUSE,
JOHN AND JANE DOES 1-10,

        Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

        This matter is before the Court on **Defendants the City and County of Denver,**

**the Denver Police Department, Officer Timothy Luke, and Officer Randall Krouse's**

**Motion to Dismiss All Claims Asserted Against Them in the Complaint** [#15][1] ("the

Motion").   On January 7, 2014, Plaintiff filed a Response to the Motion [#20].   On

January 24, 2014, Defendants[2] filed a Reply [#21].   The Motion is ripe for review.

Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion has been

---

[1]   "[#15]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).   I use this convention throughout this Recommendation.

[2]   "Defendants" refers to all Defendants who have been served and appeared in this action.

referred to this Court for a recommendation regarding disposition [#19].   The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises.   For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#15] be **GRANTED in part** and **DENIED in part**.

## I.     Background

Plaintiff initiated this lawsuit on August 29, 2013.   *See generally Compl.* [#1]. Plaintiff purports to bring claims against Defendants pursuant to 42 U.S.C. § 1983 and the Fourth, Fifth, Eighth, and Fourteenth Amendments.   *Id.* at ¶¶ 33-40.   Plaintiff asserts that the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1341, and 1343.   *Id.* at ¶ 1. Plaintiff also asserts state law claims against all Defendants for wrongful death and battery, and claims of respondeat superior liability and negligence against Defendants the City and County of Denver and the Denver Police Department.   *Id.* at ¶¶ 41-67.

In their Motion, Defendants assert that Plaintiff's claims fail because (1) the individual Defendants are entitled to qualified immunity, (2) the City and County of Denver is entitled to sovereign immunity, and (3) the state law claims should be dismissed for lack of jurisdiction following the dismissal of all federal claims under § 1983.   *Motion* [#15] at 4-12.   Further, Defendants maintain that the Complaint is "devoid of any factual allegations concerning the circumstances surrounding [the] use of force."   *Id.* at 1-2.

In his Response, Plaintiff avers that "Defendants have released no useful information to Plaintiff" and that "Plaintiff will need to conduct discovery to obtain the information Defendants hold before being able to satisfy the plausibility requirements

Defendants claim [he] should be held to." *Response* [#20] at 2.   Plaintiff alleges that "this is not a case that deals with a lot of gray area"—it "involves a police officer shooting and killing an unarmed man who did not have access to any deadly weapons" and who "was hardly in a position to pose any lethal threat to any officer." *Id.* at 5.

In their Reply, Defendants reiterate the arguments advanced in their Motion, and further argue that Plaintiff is prohibited from "using a lawsuit as a fishing expedition for a factual and legal basis for his claims." *Reply* [#21] at 1.   Further, Defendants argue that Plaintiff failed to offer any meaningful response to the deficiencies outlined in the Motion. *Id.* at 6-7.

## II.      Summary of the Facts

According to the Complaint, on July 31, 2012[3], Kevin Ryberg ("Mr. Ryberg") was found by law enforcement sleeping in a Denver motel and was taken into custody at approximately 10:45 a.m.   *Compl.* [#1] at ¶¶ 18-20.   Plaintiff alleges that Mr. Ryberg was placed in the rear seat of Defendant Luke's police car.   *Id.* at ¶ 21.   The Complaint states that Defendant Luke "was preparing to transfer Kevin Ryberg, in police custody, to [the] District 2 station."   *Id.* at ¶ 22.   Plaintiff maintains that Mr. Ryberg was unarmed and did not have control of a deadly weapon at this time.   *Id.* at ¶ 23.   Plaintiff further alleges that Defendant Krouse then "deliberately fired two shots from his service weapon into Kevin Ryberg's chest," resulting in Mr. Ryberg's death.   *Id.* at ¶ 24.

---

[3]   In paragraphs 18 and 19 of the Complaint, Plaintiff states that the incident occurred on July 31, 2013.   However, all other references to the incident state that it occurred July 31, 2012. In addition, both the Motion and the Response state that the incident occurred on July 31, 2012. Further, the Complaint is dated July 31, 2013 and it seems unlikely that Plaintiff's counsel would be able to draft a complaint on the same day the incident allegedly occurred.   Accordingly, the Court understands that the incident occurred on July 31, 2012.

The Complaint does not provide any additional factual allegations regarding the circumstances surrounding the shooting in its "Factual Allegations" section.   However, in Plaintiff's discussion of the state law cause of action alleging the wrongful death of Mr. Ryberg, the Complaint alleges that Defendants Luke and Krouse were negligent as a result of the following acts: "failure to properly confine Mr. Ryberg;" "failure to properly monitor Mr. Ryberg;" "failure to properly investigate potential dangers;" "failure to secure the plexi-glass divider between the rear seats and the front seats of the police car;" "failure to properly secure handcuffs placed on Mr. Ryberg;" "willful disregard of training, tactical principles to avoid the use of deadly force, and other police protocols;" "reckless, willful, and wanton use of deadly force;" "failure to properly avoid the use of deadly force;" and "failure to take measures to de-escalate the circumstances leading up to the death of Mr. Ryberg." *Id.* at ¶¶ 44-45.   Additionally, in the state law cause of action alleging battery, the Complaint states that "[t]he harmful and offensive contact was unprovoked and unwarranted." *Id.* at ¶ 54.

The Complaint also alleges that Defendants' conduct was "intentional, reckless, deliberate, wanton and/or malicious, negligent, and indicative of their total, deliberate and reckless disregard of and indifference to Kevin Ryberg's life . . . ." *Id.* at ¶ 34.   The Complaint states that both Defendants Krouse and Luke "demonstrated egregious lack of judgment from having an opportunity to use deadly force." *Id.* at ¶ 31.   Plaintiff asserts that Defendants' "acts and negligence in the care of [Mr. Ryberg] were the direct and proximate cause" of his death. *Id.* at ¶ 47.

4

### III.    Standard of Review

In the Motion, Defendants request dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

### A.    Federal Rule of Civil Procedure 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.   Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.   *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1).   Statutes conferring subject matter jurisdiction on federal courts are to be strictly construed.   *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).   In addition, "[t]he burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack.   *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).   When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true.   *Id.*   By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003.   With a factual attack, the moving party challenges the facts on which subject matter jurisdiction depends.   *Id.*   The Court therefore must make its own findings of fact. *Id.*   In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing."

*Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)).   The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule12(b)(1) into a motion for summary judgment pursuant to Rule 56.   *Id.*

## B.   Federal Rule of Civil Procedure 12(b)(6)

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."   *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).   To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations."   *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible."   *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.   Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid

6

of 'further factual enhancement.'"   *Id.*   (citation omitted).   That said, "[s]pecific facts are not necessary[.   Instead,] the statement need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests[, and is not required to] include all facts necessary to carry the plaintiff's burden."   *Khalik*, 671 F.3d at 1192.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."   *Iqbal*, 556 U.S. at 678 (citation omitted).   As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."   *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"   *Iqbal*, 556 U.S. at 678 (citation omitted).

Further, "[b]ecause § 1983 . . . [is a] vehicle[ ] for imposing personal liability on government officials, [the Tenth Circuit] ha[s] stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants."   *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013).   Therefore, when bringing a § 1983 claim, a plaintiff must "make clear exactly *who* is alleged to have done *what* to *whom*, . . . as distinguished from collective allegations."   *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (modifications in original) (quoting *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008)).   "When various officials have

taken different actions with respect to a plaintiff, the plaintiff's facile passive-voice showing that his rights 'were violated' will not suffice.   Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights." *Pahls*, 718 F.3d at 1225-26.   Instead, the plaintiff must "identify specific actions taken by particular defendants" in order to state a § 1983 claim.   *Tonkovich v. Kan. Bd. Of Regents*, 159 F.3d 504, 532 (10th Cir. 1998).

## IV.   Analysis

### A.   Qualified Immunity

Defendants Krouse and Luke argue that, to the extent Plaintiff seeks to hold them individually liable, they are entitled to qualified immunity.   *Motion* [#15] at 4-9.   "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   When the defense of qualified immunity is raised, the Court must consider whether Plaintiff's factual allegations demonstrate that Defendants Krouse and Luke violated a constitutional right and, secondly, whether that constitutional right was clearly established at the time of the alleged violation.   *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).   "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that a court

may review these factors in any order, using its discretion to determine which of the factors to review first in light of the circumstances of the case. *Id.* at 236.  To survive Defendants' Motion brought pursuant to Rule 12(b)(6), Plaintiff need only "plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support [his] allegations." *Shero*, 510 F.3d at 1200 (citations omitted).

In his "Request for Relief," Plaintiff invokes the Fourth, Fifth, Eighth, and Fourteenth Amendments. *Compl.* [#1] at ¶¶ 33-40.  Plaintiff alleges that Defendants Luke and Krouse's conduct was "intentional, reckless, deliberate, wanton and/or malicious, negligent and indicative of their total deliberate and reckless disregard of and indifference to Kevin Ryberg's life." *Id.* at ¶ 34.  The Court addresses each of Plaintiff's constitutional bases for his § 1983 claim against Defendants Krouse and Luke, in their individual capacities, in turn.

### 1.    Fourth Amendment Claim

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Graham v. Conner,* 490 U.S. 386, 394-95 (1989).  In evaluating an excessive force claim brought pursuant to the Fourth Amendment, Plaintiff must allege facts demonstrating that, under the totality of the circumstances, the use of force was unreasonable. *Sevier*, 60 F.3d at 699; *see also Graham*, 490 U.S. at 396.  Proper application of the reasonableness test under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to

evade arrest by flight.   *Graham,* 490 U.S. at 396 (citing *Tennessee v. Garner,* 471 U.S. 1, 8 (1985)).

First, the Complaint fails to state the reason why Mr. Ryberg was arrested, making it impossible to assess whether the alleged crime for which Mr. Ryberg was arrested was so severe as to make the use of deadly force reasonable.   The Complaint merely alleges that both Defendants Krouse and Luke "demonstrated egregious lack of judgment from having an opportunity to use deadly force."   *Compl.* [#1] at ¶ 31.

Second, with regards to whether Mr. Ryberg posed an immediate threat to the safety of the officers, the Complaint alleges that Mr. Ryberg was unarmed and did not have control over a deadly weapon at the time of the shooting.   *Id.* at ¶ 23.   The Tenth Circuit has held that use of force is excessive after the Defendant has been subdued and is not posing a threat to anyone.   *Grass v. Johnson*, 322 Fed.App'x. 586, 590 (10th Cir. 2009) citing *Baker v. City of Hamilton*, 471 F.2d 601, 607 (6th Cir. 2006) (holding that the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law).   Plaintiff alleges that "[t]he harmful contact [the shooting of Mr. Ryberg] was unprovoked and unwarranted" and that Defendant Krouse used "unnecessary and deadly force upon and [sic] unarmed individual."   *Id.* at ¶¶ 45, 54.   Plaintiff also alleges that Defendants Luke and Krouse failed to do the following: "properly confine Mr. Ryberg;" "properly monitor Mr. Ryberg;" "properly investigate potential dangers;" "secure the plexi-glass divider between the rear seats and the front seats of the vehicle;" "properly secure handcuffs on the Decedent;" and "de-escalate the circumstances" leading to Mr. Ryberg's death.   *Id.* at ¶¶ 44-45.   Even taking Plaintiff's allegations in the Complaint as

true, it remains unclear whether Mr. Ryberg was actively resisting arrest or attempting to evade arrest by flight.

Plaintiff's Complaint and Plaintiff's Response also allege contradictory facts regarding Mr. Ryberg's transfer in the police car, leaving it unclear whether or not the car was moving at the time of the shooting.   In the Complaint, Plaintiff alleges that Defendant "Luke was preparing to transfer Kevin Ryberg, in police custody, to [the] District 2 station" before Defendant Krouse fired two shots into Mr. Ryberg's chest.   *Id.* at ¶¶ 22-24.   In Plaintiff's Response, Plaintiff alleges that after placing Mr. Ryberg in the rear of the police car, "Defendant Luke proceeded to transfer Mr. Ryberg to jail."   *Response* [#20] at 1. Plaintiff's Complaint alleges that Defendants Krouse and Luke failed to "de-escalate the circumstances" leading to Mr. Ryberg's death, but does not provide any facts about those circumstances.   *Compl.* [#1] at ¶¶ 44-45.   While the Complaint alludes to a possible scenario involving Mr. Ryberg attempting to flee the police car, without additional factual context, these assertions do little to clarify whether Mr. Ryberg was actively resisting arrest.

The mere possibility that Plaintiff could prove *some* set of facts to support a Fourth Amendment violation is insufficient.   *Ridge at Red Hawk*, 493 F.3d at 1177.   Plaintiff must actually state facts that support the alleged constitutional violation in his Complaint. *Saucier*, 533 U.S. at 200-01.   Plaintiff has failed to allege facts demonstrating that, under the totality of the circumstances, Defendant Krouse's use of force was unreasonable. *Sevier*, 60 F.3d at 699; *see also Graham*, 490 U.S. at 396.   The Complaint provides no factual background regarding the severity of the alleged crime at issue and whether Mr.

Ryberg was actively resisting arrest or attempting to evade arrest by flight.   *Graham,* 490 U.S. at 396 (citing *Tennessee v. Garner,* 471 U.S. 1, 8 (1985)).   It remains unclear whether Mr. Ryberg was in the car at the time of the shooting, whether the car was moving prior to or during the shooting, whether Mr. Ryberg was under control of an officer, or whether he was otherwise restrained.   While the Complaint does allege that Mr. Ryberg was unarmed and did not have control over a deadly weapon at the time of the shooting, *Compl.* [#1] at ¶ 23, this fact alone is not sufficient to demonstrate that he was not posing an immediate threat to the safety of the officers.   Plaintiff has failed to allege facts demonstrating in what way the shooting of Mr. Ryberg was "unprovoked and unwarranted." *Id.* at ¶ 54.  Such conclusory allegations are insufficient.  *Iqbal*, 556 U.S. at 675.   Additionally, the only factual allegation involving direct interaction between Defendant Luke and Mr. Ryberg is that Mr. Ryberg was placed in the rear seat of Defendant Luke's police car and that Defendant Luke was preparing to transport Mr. Ryberg to the police station. *Id.* at ¶¶ 21-22.   These allegations do not sufficiently allege a Fourth Amendment excessive force claim against Defendant Luke.

Even interpreting the allegations in the light most favorable to Plaintiff, the Complaint fails to sufficiently allege that Defendants Luke and Krouse violated the Fourth Amendment through use of force that was unreasonable in the circumstances.  *See Iqbal*, 556 U.S. at 678; *Sevier*, 60 F.3d at 699.   Therefore, because Plaintiff has not alleged sufficient facts to allow the Court to conclude that a Fourth Amendment right may have been violated if the allegations were established, there is no need to determine whether the right was clearly established at the time of the alleged violation.   *Saucier*, 533 U.S. at 200-01.   Defendants Luke and Krouse are entitled to qualified immunity

regarding the Fourth Amendment claims.

**2.    Eighth Amendment Claim**

Plaintiff also contends that Defendants Luke and Krouse violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishments.   *Compl.* [# 1] at ¶ 38.

**a.    Whether There Is a Properly Alleged Eighth Amendment Violation**

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted.   U.S. Const. amend. VIII.   Punishments which "involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).   The Constitution prohibits punishment that is "so totally without penological justification that it results in the gratuitous infliction of suffering."   *Gregg*, 428 U.S. at 183.   "The gratuitous infliction of pain always violates contemporary standards of decency and need not produce serious injury in order to violate the Eighth Amendment."   *Quade v. Milyard*, No. 07-cv-00229-WYD-MJW, 2008 WL 4097468, at *2-3 (D. Colo. Sept. 2, 2008) (citing *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)).   Further, the Eighth Amendment also prohibits the wanton infliction of psychological pain.   *See Calhoun v. DeTella*, 319 F.3d 936, (7th Cir. 2003) (citing cases); *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001) ("[W]e are in accord with Justice Blackmun's views in *Hudson v. McMillian*, 503 U.S. at 16-17, that the Eighth Amendment may be implicated not only [by] physical injury, but also by the infliction of psychological harm.").

"Ordinarily, an excessive force claim brought under the Eighth Amendment involves two prongs: (1) an objective prong that asks 'if the alleged wrongdoing was

objectively harmful enough to establish a constitutional violation,' and (2) a subjective prong under which the plaintiff must show that 'the officials act[ed] with a sufficiently culpable state of mind.'" *Giron v. Corrections Corp. of America,* 191 F.3d 1281, 1289 (10th Cir.1999) (quoting *Hudson,* 503 U.S. at 8) (internal quotation marks omitted) (alteration in original).   The objective component of an excessive force claim is "contextual and responsive to 'contemporary standards of decency.'"   *Hudson,* 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "The subjective element of an excessive force claim 'turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Giron,* 191 F.3d at 1289 (quoting *Whitley,* 475 U.S. at 320-21).

Considering the objective component first, Plaintiff alleges that Defendant Krouse "deliberately fired two shots from his service weapon into Kevin Ryberg's chest," resulting in Mr. Ryberg's death.   *Compl.* [#1] at ¶ 24.   The alleged shooting of Mr. Ryberg is objectively harmful enough to establish a constitutional violation.   *Hudson*, 503 U.S. at 2 (finding that while the Eighth Amendment does not reach *de minimis* use of physical force, beating by prison guards resulting in inmate having minor bruises, facial swelling, loosened teeth, and a cracked dental plate was objectively harmful enough to establish a constitutional violation). The Court finds that, with regard to Plaintiff's claim against Defendant Krouse, the objective component is met by this allegation.   Nowhere in the Complaint, however, does Plaintiff allege that Defendant Luke shot Mr. Ryberg or physically injured him in any way.   Therefore, the Complaint fails to allege that Defendant Luke violated Mr. Ryberg's Eighth Amendment rights.   Accordingly, the Court finds that

14

Defendant Luke is entitled to qualified immunity regarding Plaintiff's Eighth Amendment claim.

Next, as to the subjective component, the Court considers whether Plaintiff has sufficiently alleged that Defendant Krouse intended harm, i.e., whether he acted "maliciously and sadistically."   *See Hudson*, 503 U.S. at 9.   Indeed, the touchstone inquiry in an excessive force claim is whether the force was applied in a "good-faith effort to maintain and restore discipline or maliciously and sadistically" to cause harm.   *See DeSpain v. Uphoff*, 264 F.3d 965, 978 (quoting *Whitley*, 475 U.S. at 320-21).   The subjective element can only be proven by showing that Defendant Krouse acted with a sufficiently culpable state of mind.   *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hudson*, 503 U.S. at 8.

The Complaint states that "Defendants' conduct was intentional, reckless, deliberate, wanton and/or malicious, negligent, and indicative of their total, deliberate and reckless disregard of and indifference to Kevin Ryberg's life . . . ."   *Compl.* [#1] at ¶ 34. The Complaint also alleges that the shooting was "unprovoked and unwarranted."   *Id.* at ¶ 54.   While the Complaint fails to allege further factual background to support this claim, accepting the allegations of the Complaint as true for purposes of considering this Motion, Defendant Krouse's allegedly unprovoked and unwarranted shooting of Mr. Ryberg would be repugnant to the conscience of mankind so as to rise to the level of a constitutional violation.   *See Hudson*, 503 U.S. at 9-10.   The Complaint does, therefore, sufficiently allege that Defendant Krouse violated Mr. Ryberg's Eighth Amendment rights.

### b.     Whether the Eighth Amendment Right was Clearly Established

With regard to Plaintiff's Eighth Amendment claim against Defendant Krouse, the

Court next turns to the second part of the analysis: whether Plaintiff's Eighth Amendment right was clearly established at the time of the seizure.   On March 27, 1985, the Supreme Court found that a valid claim exists under the Eighth Amendment if there is an indication that "the use of deadly force was intended to punish rather than to capture the suspect." *Garner*, 471 U.S. at 30 (citing *Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979)).   The events underlying this lawsuit occurred on July 31, 2012.   *See supra* footnote 3.   Plaintiff alleges that the shooting of Mr. Ryberg was "unprovoked and unwarranted" and resulted in Mr. Ryberg's death.   *Compl.* [#1] at ¶¶ 27, 54.   Further, the Complaint states that "Defendants' conduct was intentional, reckless, deliberate, wanton and/or malicious, negligent, and indicative of their total, deliberate and reckless disregard of and indifference to Kevin Ryberg's life . . . ."   *Compl.* [#1] at ¶ 34.   Assuming the factual allegations are true, Defendant Krouse's "malicious" and "unprovoked and unwarranted" shooting of Mr. Ryberg while he was in the back of the police car may amount to punishment. *See Garner*, 471 U.S. at 30.   Thus, at the time of the seizure, Plaintiff's Eighth Amendment right to be free from the use of "unprovoked and unwarranted" deadly force by Defendant Krouse was clearly established.

Plaintiff's Complaint alleges that both Defendants Krouse and Luke violated Plaintiff's clearly established constitutional right under the Eighth Amendment. Specifically, the Complaint states that Defendant Krouse then "deliberately fired two shots from his service weapon into Kevin Ryberg's chest," resulting in Mr. Ryberg's death. *Compl.* [#1] at 5.   Notably, the Complaint only alleges that Defendant Krouse fired the weapon, and that Defendant Luke was "preparing to transfer Kevin Ryberg, in

16

police custody, to [the] District 2 station." *Id.* at 5.   Accordingly, the Court finds that Defendant Luke is entitled to qualified immunity regarding Plaintiff's Eighth Amendment claim, and Defendant Krouse is not entitled to qualified immunity regarding Plaintiff's Eighth Amendment claim.

### 3.   Fifth and Fourteenth Amendment Claims

In the Complaint, Plaintiff also alleges that Defendants Luke and Krouse violated Mr. Ryberg's Fifth and Fourteenth Amendment right to due process.   *Id.* at 6-7.   The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law."   U.S. Const. amend. XIV, § 1.   Similarly, the Due Process Clause of the Fifth Amendment states that no person shall "be deprived of life, liberty, or property, without due process of law."   U.S. Const. amend. V.   Here, Plaintiff's Fifth Amendment claim is a mere reiteration, practically indistinguishable from his Fourteenth Amendment Claim.   Further, it is unclear whether Plaintiff intends to assert a procedural due process claim, a substantive due process claim, or both.

### a.   Substantive Due Process

The Supreme Court held "that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989).   As the Supreme Court explained, "Because the Fourth Amendment provides an explicit textual source of constitutional

protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* Therefore, though it may be possible to analyze Plaintiff's Fifth and Fourteenth Amendment claims under the framework of substantive due process, such analysis is disfavored if the claim can be analyzed under "an explicit textual source of constitutional protection." *Id.* Here, an arrest qualifies as a "seizure" of a person under the Fourth Amendment; therefore, Plaintiff's Fifth and Fourteenth Amendment substantive due process claims should be addressed within the context of a Fourth Amendment analysis. *Ashcroft v. al-Kidd*, 563 U.S. __, __, 131 S.Ct. 2074, 2080 (2011) ("An arrest, of course, qualifies as a 'seizure' of a 'person' under" the Fourth Amendment).   As noted above, Plaintiff has failed to properly assert a Fourth Amendment claim.

### b.   Procedural Due Process

Procedural due process protects the individual against "arbitrary action of government." *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974).   In general, a plaintiff must make two showings in order to proceed on a procedural due process claim. *See Bartell,* 263 F.3d at 1149.   First, a plaintiff must demonstrate that he possesses a protected liberty or property interest. *Id.*   Second, a plaintiff must show that the procedures utilized which impacted his protected interest were inadequate under the circumstances. *Id.* at 1149.   The Constitution does not in itself create any liberty or property interest and therefore "[t]he Due Process clause standing alone confers no liberty interest in freedom from state action 'within the sentence imposed.'" *Sandin v. Conner,* 515 U.S. 472, 480

(1995) (citation omitted). Rather, liberty interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972).

An individual's right to be free from unlawful arrest implicates a liberty interest protected by the Constitution and federal laws, the violation of which may give rise to a cause of action under § 1983. *See Monroe v. Pape,* 365 U.S. 167 (1961). Plaintiff does not allege any facts regarding why Mr. Ryberg was arrested or whether the arrest should be considered unlawful. Therefore, Plaintiff has failed to demonstrate that Mr. Ryberg possessed a protected property or liberty interest which was violated for the purposes of a procedural due process analysis. Further, the Court has already addressed Plaintiff's allegations regarding excessive force and deprivation of life in the Fourth Amendment analysis. For these reasons, Defendants Krouse and Luke are entitled to qualified immunity on the Fifth and Fourteenth Amendment claims. Because no constitutional right would have been violated were the allegations established, there is no need to determine whether the constitutional right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 200-01.

Because Defendant Luke is entitled to qualified immunity, the Court respectfully **recommends** that Plaintiff's 28 U.S.C. § 1983 claim brought under the Fourth, Fifth, Eighth, and Fourteenth Amendments against Defendant Luke in his individual capacity be **dismissed without prejudice**. *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (finding that prejudice should not attach to a dismissal when plaintiff has made

allegations "which upon further investigation and development, could raise substantial issues"). Defendant Krouse is entitled to qualified immunity with respect to the claims alleging Fourth, Fifth, and Fourteenth Amendment violations, and the Court respectfully **recommends** that these claims be **dismissed without prejudice**. *Id.* With respect to the alleged violation of Plaintiff's Eighth Amendment right brought against Defendant Krouse in his individual capacity, Defendant Krouse is not entitled to qualified immunity based upon the allegations in the Complaint. Therefore, the Court respectfully **recommends** that the Motion [#15] be **denied** to the extent it seeks dismissal of the Eighth Amendment claim asserted against Defendant Krouse in his individual capacity.

## B.    Sovereign Immunity

Plaintiff also asserts a claim under 42 U.S.C. § 1983 against Defendant the City and County of Denver, and Defendants Luke and Krouse in their official capacities.

"Suits against state officials in their official capacity should be treated as suits against the state." *Hafer v. Melo,* 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham,* 473 U.S. 159, 166 (1985)); *see also Duncan v. Gunter,* 15 F.3d 989, 991 (10th Cir.1994) (finding that state officers sued in their official capacity are not "persons" subject to suit under 42 U.S.C. § 1983.). The doctrine of sovereign immunity bars "a citizen from suing his own State under the federal-question head of [subject-matter] jurisdiction." *Alden v. Maine,* 527 U.S. 706, 727 (1999) (citing *Hans v. Louisiana,* 134 U.S. 1, 14-15 (1890)); *see generally id.* at 728 (noting that "sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself" (citations omitted)). The doctrine applies whether the relief sought is legal or equitable, *Papasan v. Allain,* 478

U.S. 265, 276 (1986), and it "confers total immunity from suit, not merely a defense to liability," *Ambus v. Granit Bd. of Educ.,* 995 F.2d 992, 994 (10th Cir.1993).   The Court lacks subject-matter jurisdiction to adjudicate an action brought by a citizen of Colorado against the state of Colorado, its agencies, or its officials in their official capacity. *Johns v. Stewart,* 57 F.3d 1544, 1552 (10th Cir.1995).     Accordingly, the Court **recommends** that Plaintiff's claims against Defendants Luke and Krouse in their official capacities be **dismissed without prejudice**. *See Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1216 (10th Cir.2006) ( "[W]here the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.").

The Court next turns to Defendant the City and County of Denver's liability under § 1983.   In *Monell v. Dept. of Social Services*, the United States Supreme Court held that municipalities and other local government units are "persons" to whom § 1983 applies. 436 U.S. at 690.   A county may be held liable for its own unconstitutional or illegal policies, however, it "cannot be held liable *solely* because it employs a tortfeasor—or, in other words a municipality cannot be held liable under § 1983 on a respondeat superior theory."   *Monell,* 436 U.S at 690.   In order to be held liable for the allegedly tortious acts of its agents, Plaintiff must show that Defendant the City and County of Denver directly caused the constitutional violation by instituting an "official municipal policy of some nature," that was the "direct cause" or "moving force" behind the constitutional violations. *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 944 (10th Cir. 2005) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-85 (1986); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985)).   "That is, a plaintiff must show that the municipal action was taken with

the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 404 (1997).   In Plaintiff's Complaint, he alleges that "the City and County of Denver is a political subdivision of the State of Colorado and as such, operates a police department by the name of the Denver Police Department." *Compl.* [#1] at ¶ 8.   Plaintiff does not state any facts in the Complaint to demonstrate that Defendant Krouse's allegedly tortious actions were undertaken pursuant to a municipal policy or custom or that Defendant the City and County of Denver directly caused the alleged constitutional violation in some other way.   Therefore, Defendant the City and County of Denver, as an agency of the state of Colorado, is entitled to sovereign immunity.   *See Johns*, 57 F.3d at 1522.

Accordingly, the Court respectfully **recommends** that Plaintiff's claims against Defendant the City and County of Denver be **dismissed without prejudice**.   *Garman v. Campbell County Sch. Dist. No. 1,* 630 F.3d 977, 985 (10th Cir.2010) ("Generally, a dismissal for lack of subject matter jurisdiction is without prejudice and does not have a preclusive effect."); *Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1216 (10th Cir.2006) ("[W]here the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice."); *Inodora v. Doris*, No. 10-CV-02303-PAB-KLM, 2011 WL 3666748 (D. Colo. June 6, 2011) *report and recommendation adopted*, 10-CV-02303-PAB-KLM, 2011 WL 3665338 (D. Colo. Aug. 19, 2011).

## C.      Defendant the Denver Police Department

Defendants argue that the Denver Police Department is not a separate entity

subject to suit pursuant to § 1983.  *See Motion* [#15] at 10.  Defendants state that because the Denver Police Department is a public entity within the meaning of Colo. Rev. Stat. § 24-10-103(5), and no waiver of sovereign immunity has been established, this Court does not have subject matter jurisdiction over Plaintiff's claims against this Defendant.  *Id.*

Courts have continually dismissed section 1983 claims that have named and sought to impose liability directly on municipal and county police departments because police departments are not separate suable entities. *See, e.g., Martinez v. Winner,* 771 F.2d 424, 444 (10th Cir. 1985) (dismissing section 1983 claims because City of Denver Police Department not a separate suable entity), *remanded to consider mootness,* 475 U.S. 1138 (1986), *on remand,* 800 F.2d 230 (10th Cir.1986); *Boren v. City of Colorado Springs,* 624 F.Supp. 474, 479 (D. Colo. 1985) (holding city's police department, as merely the vehicle through which city fulfills its policing functions, not a proper party); *Stratton v. Boston,* 731 F.Supp. 42, 46 (D. Mass. 1989) (dismissing action as against city police department that is not an independent legal entity); *Reese v. Chicago Police Dept.,* 602 F.Supp. 441, 443 (N.D. Ill. 1984) (holding Chicago Police Department and Cook County Attorney's Office have no legal existence independent of city and county, and therefore cannot be sued).   Therefore, the Court finds that Defendant the Denver Police Department is not a "person" subject to suit under § 1983.  *See Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991) *aff'd*, 986 F.2d 1429 (10th Cir. 1993) (finding that the Greenwood Village Police Department was not a "person" pursuant to § 1983); *see also Martinez*, 771 F. 2d at 444.   Therefore, the Court **recommends** that Plaintiff's claims against Defendant the Denver Police Department be **dismissed with prejudice**

pursuant to Fed. R. Civ. P. 12(b)(1).   *Gash v. City of Denver*, No. 12-cv-00929-REB-MJW, 2012 WL 3638798 (D. Colo. Aug. 23, 2012) (dismissing claims with prejudice because "plaintiff cannot state viable claims against the Denver Fire Department or Denver Police Department as they are not juridical entities subject to suit").

## D.   State Law Claims

Plaintiff also asserts state law claims against all Defendants[4] for wrongful death and battery, and claims of respondeat superior liability and negligence against Defendants the City and County of Denver and the Denver Police Department.   *Compl.* [#1] at ¶¶ 41-67.   Each of these state law claims is a tort.   Colo. Rev. Stat. § 13-80-103 (battery is a tort); *Wittner v. Banner Health*, 720 F.3d 770, 772 (10th Cir. 2013) (wrongful death is a state law tort claim); *Stokes v. Denver Newspaper Agency, LLP*, 159 P.3d 691, 693 (Colo. App. 2006) ("Under the respondeat superior doctrine, an employer is liable for torts of an employee acting within the scope of employment."); *Collins v. BAC Home Loans Servicing LP*, 912 F.Supp.2d 997, 1007 (D. Colo. 2012) (negligence is a state common law tort).

In the Motion, Defendants argue that Defendants Krouse and Luke are immune from tort liability under the Colorado Governmental Immunity Act (the "CGIA") because Plaintiff failed to allege that either of the individual Defendants' conduct was "willful and wanton."   *Motion* [#15] at 11.   With regard to the state law claims asserted against Defendant the City and County of Denver, Defendants argue that this Defendant is

---

[4]   While Plaintiff states that Plaintiff has suffered harm as a "result of Defendants' illegally battery," *id.* at ¶ 55, the factual allegations stated in support of this cause of action only specify actions allegedly taken by Defendants Krouse and Luke.   *Id.* at ¶¶ 51-56.

"immune from the claims unless Plaintiff can identify a specific waiver of immunity." *Id.* (citing Colo. Rev. Stat. § 24-10-106(1) and *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 924 (Colo. 1993)).   Finally, with regard to the claims asserted against the John and Jane Doe Defendants, Defendants argue that those claims fail for the same reasons the claims against the individual Defendants fail and that the Complaint "contains no allegations regarding conduct by anybody other than Officers Luke and Krouse." *Id.* at 12.

"The notice provisions of the CGIA apply when federal courts hear Colorado tort claims under supplemental jurisdiction." *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 838 (10th Cir. 2003) (citing *Renalde v. City & County of Denver, Colo.*, 807 F.Supp. 668, 675 (D. Colo. 1992)).   Even though Defendants do not address the notice provisions in the Motion or the Reply, the Court "will consider sua sponte whether [ ] Plaintiff[ ] complied with the CGIA notice provisions, codified at Colo. Rev. Stat. § 24-10-109, and whether factual issues of compliance remain outstanding." *Id.* (citing *Brock v. Nyland*, 955 P.2d 1037, 1043 (Colo. 1998)).

"[A]ny person bringing a tort claim against the state, a state agency, or a state employee must comply with the notice requirements set forth [in the CGIA]." *Patrick v. Bank of New York Mellon*, No. 11-cv-01304-REB-MJW, 2012 WL 934288, at *9 (D. Colo. Mar. 1, 2012).   Section 24-10-109(1) states:

> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty days after the date of discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury.   Compliance with the

25

> provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

Colo. Rev. Stat. § 24-10-109(1).   Failure to provide the required written notice "operates as a jurisdictional bar to the lawsuit."   *Aspen Orthopaedics & Sports Medicine, LLC*, 353 F.3d at 839.   Moreover, "a plaintiff must plead compliance with the CGIA's notice provisions in the complaint to avoid dismissal." *Id.* at 840.   "When a plaintiff fails to plead compliance with the CGIA, and a court addresses the case in the context of a motion to dismiss, the court must accept as a matter of 'fact' that the plaintiff failed to comply with the notice provisions."   *Id.*

> As the Tenth Circuit explained in *Aspen Orthopaedics*,

> When faced with situations in which a plaintiff fails to plead compliance with the CGIA, Colorado courts have taken two courses of actions.   First, if the plaintiff fails to plead compliance and cannot cure this defect, Colorado courts dismiss the claims with prejudice.   *See, e.g., Jones v. Northeast Duragno Water Dist.*, 622 P.2d 92, 94 (Colo. App. 1980).   If the plaintiff fails to plead compliance but later proves compliance at trial prior to the raising of an objection to the sufficiency of the complaint, Colorado courts, pursuant to Colo. R. Civ. P. 15(b), treat the CGIA notice issues "as if they had been raised in the complaint."   *Morgan v. Bd. of Water Works of Pueblo*, 837 P.2d 300, 302 (Colo. Ct. App. 1992).

*Id.* at 842.   Here, the Court faces the former situation.   Plaintiff alleges that Mr. Ryberg was shot and killed on July 31, 2012, *Compl.* [#1] at ¶¶ 18-27, 49, 52, 65, but Plaintiff fails to allege either compliance with section 24-10-109 or facts that would support an inference that Plaintiff complied with the notice provision.   Further, the Complaint is dated July 31, 2013 and was filed on August 29, 2013.   *See id.* at 12.   Accordingly, Plaintiff's 180-day notice period has expired.   There can be no doubt that as of the date Plaintiff filed the Complaint, he had discovered the injury.   Accordingly, Plaintiff was

required to provide notice pursuant to Colo. Rev. Stat. § 24-10-109(1), at the latest within 180 days of August 29, 2013. Therefore, Plaintiff's 180-day period elapsed, at the latest, in February 2014.   As a result, Plaintiff cannot cure this defect.   Accordingly, the Court **recommends** that Plaintiff's state law claims be **dismissed with prejudice**.   *See Aspen Orthopaedics & Sports Medicine, LLC*, 353 F.3d at 839 (finding that failure to timely file notice of claim against a state entity forever bars such claim); *City and County of Denver v. Crandall*, 161 P.3d 627, 634 (Colo. 2007) ("The CGIA notice of claim provision is both a condition precedent and a jurisdictional prerequisite to suit under the CGIA, must be strictly applied, and failure to comply with it is an absolute bar to suit."); *compare Brereton*, 434 F.3d at 1216-17 (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim") *with Carbajal v. St. Anthony Cent. Hosp.,* No. 12-cv-02257-REB-KLM, 2013 WL 4799654, at *5 (D. Colo. Sept. 6, 2013) (adopting recommendation that state law claims be "dismissed with prejudice for failure to comply with the notice requirements of the" CIGA) *and with Martinez v. El Paso Cnty.*, 673 F. Supp. 1030, 1032 (D. Colo. 1987) ("I find and conclude that the Fourth through Eighth and Tenth and Eleventh Claims must be dismissed with prejudice as to the plaintiffs . . . for failure to give timely notice as required under § 24–10–109.").

**E.      John and Jane Doe Defendants**

"[P]ursuant to Fed. R. Civ. P. 10, a caption to a complaint must include the names of all parties." *Culp v. Williams*, Civil Action No. 10-cv-00886-CMA-CBS, 2011 WL 1597686, at * (D. Colo. April 27, 2011) ("Culp I"), *aff'd*, 456 Fed. App'x 718 (10th Cir. 2012) ("Culp II") (unpublished decision).   The "Federal Rules of Civil Procedure do not explicitly allow the naming of fictitious or anonymous parties in a lawsuit [therefore,] 'an action may be dismissed if the defendant is not sufficiently identified to permit service of process.'" *Culp I*, 2011 WL 1597686, at *3 (quoting *Stratton v. City of Boston*, 731 F.Supp. 42, 45 (D. Mass. 1989)); *see also* 2 James Wm. Moore *et al.*, Moore's Federal Practice § 10.02[2][d] at 10-16 (3d ed. 2010) ("The court will not permit use of the 'Doe' designation for a defendant if the plaintiff's ignorance of the defendant's true identity is the result of willful ignorance or lack of reasonable inquiry.   If reasonable inquiry would have revealed the true identity, a pleading naming John Doe defendants will be dismissed.").

Here, Plaintiff filed suit on August 29, 2013 and has failed to amend his Complaint to include the names of the individuals he named as Defendants John and Jane Does 1-10.   *Compl.* [#1] at 1.   The Court recognizes that Plaintiff has not had the benefit of discovery in this case "which could disclose the exact identity of the [individuals] whom plaintiff" has identified as John and Jane Doe Defendants.   *Saffron v. Wilson*, 70 F.R.D. 51, 56 (D.D.C. 1975) (denying motion to dismiss John Doe defendants for failure to identify the individuals prior to discovery but dismissing plaintiff's *Bivens* claims precluded by federal statute), *aff'd in part and rev'd in part on other grounds*, 333 F.3d 273 (D.C. Cir. 2003).   However, the Court should only allow claims against parties whose names are

unknown to proceed "if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Hartley v. Wilfert*, 931 F.Supp.2d 230, 233 (D.D.C. 2013) (quotation and citation omitted).   Here, Plaintiff simply states that the John and Jane Doe Defendants "are such other law enforcement officers and personnel, that may have been involved in the investigation, arrest and death of Kevin Ryberg, and who were negligent and/or wrongful with regard to their conduct and contributed to the death of Kevin Ryberg."   *Compl.* [#1] at ¶ 14.   Further, it is unclear if Plaintiff's blanket use of "Defendants" in his Complaint is meant to include the John and Jane Doe Defendants in each of his claims.   Plaintiff does specifically name these Defendants within his wrongful death claim.   *Compl.* [#1] at ¶ 46.   As established above, however, Plaintiff's state law claims must be dismissed for failure to comply with the notice provision of the CGIA.   Assuming, for purposes of considering the Motion, that Plaintiff includes the John and Jane Doe Defendants in his § 1983 claim, the Court will briefly address that claim.

In his Complaint, Plaintiff fails to include any specific details regarding Defendants John and Jane Does 1-10 within his § 1983 claim or his background factual allegations. *Compl.* [#1] at ¶¶ 17-40.   Based on the current set of allegations, all of Plaintiff's claims against the John and Jane Doe Defendants are subject to dismissal for the reasons discussed above in Section A even if he is eventually able to name the appropriate individuals.   Accordingly, the Court **recommends** that, to the extent he asserts one, Plaintiff's § 1983 claim against Defendants John and Jane Does 1-10 should be **dismissed without prejudice**.   *See Culp II*, 456 Fed. App'x at 720 (affirming dismissal

of claims against John Doe defendants); *Culp I*, 2011 WL 1597686, at *4 (dismissing claims against John Doe defendants "due to Plaintiff's failure to identify properly these Defendants and to exhaust his administrative remedies in connection with these claims"). The Court further **recommends** that Plaintiff's state claim claims against Defendants John and Jane Does 1-10 be **dismissed with prejudice** for failure to comply with the CGIA's notice provision.   *See Aspen Orthopaedics & Sports Medicine, LLC*, 353 F.3d at 839 (finding that failure to timely file notice of claim against a state entity forever bars such claim); *City and County of Denver v. Crandall*, 161 P.3d 627, 634 (Colo. 2007) ("The CGIA notice of claim provision is both a condition precedent and a jurisdictional prerequisite to suit under the CGIA, must be strictly applied, and failure to comply with it is an absolute bar to suit.").

## V.   Conclusion

Accordingly,

IT IS RESPECTFULLY **RECOMMENDED** that Defendants' Motion [#15] be **GRANTED in part** and **DENIED in part** as follows:

- that the Motion be **GRANTED** to the extent it argues that Defendant Luke is entitled to qualified immunity and, as a result, that the federal claims asserted against him in his individual capacity be **DISMISSED without prejudice;**

- that the Motion be **GRANTED** to the extent it argues that Defendant the City and County of Denver is entitled to sovereign immunity, and the federal claims asserted against Defendant the City and County of Denver be **DISMISSED without prejudice;**

- that the Motion be **GRANTED** to the extent it argues that Defendants Luke and Krouse are entitled to sovereign immunity with regard to the federal claims asserted against them in their official capacities, and that those claims be **DISMISSED without prejudice;**

30

- that the Motion be **GRANTED** to the extent it argues that Defendant the Denver Police Department is not a "person" subject to suit under § 1983 and, as a result, that the federal claims asserted against Defendant the Denver Police Department be **DISMISSED with prejudice**;

- that all state law claims be **DISMISSED with prejudice** because of Plaintiff's failure to comply with the notice provision of the CGIA;

- that the Motion be **GRANTED** to the extent it argues that the federal claims asserted against Defendants John and Jane Does 1-10 be dismissed, and that the federal claims asserted against those Defendants be **DISMISSED without prejudice**;

- that the Motion be **GRANTED** to the extent it argues that Defendant Krouse is entitled to qualified immunity with respect to Plaintiff's Fourth, Fifth, and Fourteenth Amendment claims asserted against him, and that those claims be **DISMISSED without prejudice**; and

- that the Motion be **DENIED** to the extent it asserts that Defendant Krouse is entitled to qualified immunity with respect to Plaintiff's Eighth Amendment.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.   *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real*

*Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:   April 29, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge